We will hear argument next in No. 221564, Dixon v. United States. May it please the Court, I am here on behalf of Appellant Alan C. Dixon. Today we request that this Court review the lower court's decision de novo and reverse and remand the judgment for the reasons set forth in our brief. Here the lower court conflated the informal claims doctrine with the Angeles Milling Doctrine when it dismissed Dixon's net investment income tax claim on the basis that the IRS could have not waived the signature requirement despite the taxpayer never arguing a waiver in the lower courts. I will also address that the taxpayer's unsigned amended tax return can form the foundation of the informal claim doctrine and that the taxpayer perfected the informal claim by filing signed amended tax returns. As this Court stated in Computer Vision, formal compliance with the statute and regulation is excused until a formal claim is filed when the informal claim doctrine is applicable. The formal compliance is not waived under the informal claim doctrine and the applicability of the informal claim doctrine is dependent on the taxpayer curing the defects by filing a perfected claim for refund. The informal claim for purposes of the informal claim doctrine is a timely claim with purely formal defects that fairly appraises the IRS of the basis of the claim within the limitation period. This is precisely what the taxpayer argued in the lower court. When the lower court discussed the informal claim doctrine, the lower court first aired in its analysis of the Supreme Court decision in Kales. Let's assume we agree with you on this point, that the informal claims doctrine is sufficient even without a signature and that the taxpayer can correct that. Doesn't the case also suggest that the taxpayer has to correct that while the IRS still has the authority to rule on the claim? Correct. And here our courts have held that if the IRS rejects the claim, there would be no means for a taxpayer to correct the informal claim. But here, while the IRS asked for additional documents, they never outright rejected the claim. Okay, I get that. The problem for you here is that, or at least as I see it, is not just that the IRS didn't reject it, but that you actually filed suit in the Court of Federal Claims before you attempted to correct it and once it's in the Court of Federal Claims, the IRS doesn't have authority to issue a new decision, does it? So, this issue is also raised in Kales, where the taxpayer... Right, right, right. But I think Kales, you know, Kales is very hard to read, but I'm not sure it addresses this point specifically. And I think in Memphis Cotton, another Supreme Court case, and in our case, Computer Vision, that we do say specifically, more specifically, that if the case is then proceeds to the Court of Federal Claims, that the IRS no longer has the authority to remedy any defects in an informal claim. And that's what happened here, right? You didn't file the amended claim until after you'd already filed suit and in fact lost, I think, right? It was dismissed for... Yeah. So, why doesn't that case law suggest that even if we agree that this was an informal claim, the first document without signature, without proper signature, was an informal claim that could be remedied, that you lost your ability to do that once you filed suit in the Court of Federal Claims? Sure. So, just to address Kales for one second... Well, I'd rather have you address the cases I asked you to address. In Computer Vision, I believe the issue was under Germania's doctrine, which is a different judicial doctrine. Under the Germania's doctrine, the taxpayer can submit additional information that while the IRS is investigating the claim, and so there could be the danger of a continued statute of limitations. Well, I understand it's under a different doctrine, but doesn't the same rationale apply that the whole point of the informal claim doctrine is that you put the IRS on notice that you're going to do something, you're seeking a refund, and you've just not made specific requirements, but that you can do it later while the IRS still has the authority to address that amended filing. But if the IRS no longer has the authority to address that filing, then why should you be allowed to file an amended return? So there have been other cases, for example, I think Green-Tabiti, where even a tax court petition was considered the informal claim, and the court ended up ruling against the informal claim doctrine because the claim wasn't perfected. But if there's no valid refund claim filed, because the tax return doesn't abide by statute, it's not a refund claim that can maintain a suit in the federal courts, so the initial suit was dismissed for a lack of subject matter jurisdiction, so it's our position the IRS still had the authority to accept the informal claim doctrine because they were put on notice that a valid refund claim will be filed. So when I read this piece of the government's brief, I went back and checked what the government had argued to the Court of Federal Claims, and at least I was not able to find any raising by the government in the Court of Federal Claims of the idea that the informal claim is barred because the cure came too late, i.e. at a time when the IRS couldn't do anything about it. But your reply brief does not assert forfeiture, does not assert that the government forfeited this argument, even though the informal claim is like a page or two in each of the motion to dismiss and the reply brief, and at least if it's there, if this point is there, I've missed it. So should we say, I mean, I would be inclined to have you, I think, made the argument that it was forfeited, and indeed, if it were true from the government that it was not made below to say the government had forfeited the point, but you haven't made that point. In the reply brief, we did just address that we did not, the taxpayer still had the authority to submit the perfected claim of refund, but yes, the main argument. What would be, if I'm remembering right, and just you can fill in some details, that in our case on the subject with the computer vision where this is talked about in the germaneness context, although some of the Supreme Court decisions seem to actually talk about it in the informal claim context, that the loss of IRS authority was attributable to a 1933 executive order transferring authority from Treasury to the Justice Department when something is in litigation. Have you, I'm not quite sure what to make of all of that, but do you have anything more to remind us about? Because the case was dismissed, the federal court didn't have subject matter jurisdiction, so it's our... It was dismissed by the claims court on February 21st, you filed your cure on February 25th, you then filed a notice of appeal a couple of weeks later, and the appeal went on for some time before you voluntarily dropped it, so it was in litigation at the time your cure was filed. Is it possible that your cure, though not ripe then, ripened upon the final dropping of the appeal so that IRS perhaps could not have acted on, you know what I mean by the cure, right? The signed form of the identical refund request, couldn't have acted on it then, but when finally you, this court, I guess by agreement of the parties, dismissed the appeal in the first suit, then the IRS could have acted on it then, and therefore this still pending, perfected refund claim counted? Correct, Your Honor. So when the, once it was completely dismissed out of the federal courts, the IRS certainly had the jurisdiction, again, to assess that claim. Where is that argument in your briefs? I'm not quite sure if we... I mean the briefing in this case on both sides is atrocious, and you're not, I mean on this point, I get why it wasn't addressed below, because the government didn't raise it, but they did raise it in the red brief, and you didn't talk about forfeiture, and then you, this whether it ripened or not, I mean it could be right, could be wrong, you didn't I mean, so the appeal got dismissed, and you had filed these amended refund claims, so assuming they ripened, when did you then file a new case in the court of federal claims? The new case was filed, I believe, three days later after the dismissal of the notice. So during that three-day window, you think the IRS could have had the authority to consider that and continue to deny the claims? So if the three days... I'm sorry, I'm not sure. I thought that you voluntarily dismissed case number one in this court on September 21st, 2020. The case you now have in front of us was filed, yes, three days, September 24th, okay. So that's the window of IRS available action? I believe the previous counsel for taxpayer started counting from the day it was filed, but if the jurisdiction was transferred on September 21st, then the court of federal claims also didn't have the jurisdiction for the foreign tax credit, and the government is arguing that while the court of federal claims didn't have jurisdiction of the first two claims, they had it over the second claim. Can I go back to the question that Judge Hughes raised about 12, 14 minutes ago in the argument, which opened up this discussion about whether or not the jurisdiction of the case had been transferred to the courts and away from the IRS, and therefore you can't have any relief even assuming you had a valid and verbal claim. I want to go back to whether the assumption that you had a valid and verbal claim and talk about that. It looks to me, and maybe I'm wrong, it looks to me like Brown sets forth a default rule, and the default rule is that an unsigned refund return is invalid, and they cite the regulation that says that, and it's invalid for the lack of a signature, and that such a return is not for any purpose in the regulation. I realize that Brown took its default rule and applied it to Section 7422 to say that the client there hadn't satisfied one of the elements of the cause action, but nonetheless it's a default rule. And so if I take that default rule and I apply it here, I say, well, an unsigned refund return is invalid for any purpose, then why doesn't that end the case? So the language for any purpose has been in trash regulations for almost 60 years, and within the last 60 years courts have found valid informal claims. I realize that there's a huge body of law on informal claims, and I realize that even a Supreme Court case like Kales deals with a situation where there wasn't a signed return. Memphis Cotton, there was, and probably I think in the Milling case, there was a sworn declaration. But yes, there are lots of case law, but I haven't found a single case where the question was presented, the challenge was made to say, I'm sorry, an unsigned return is invalid, can't be used. So, I mean, you have Judge Posner's acute victim in a case, Seventh Circuit, but I don't find a holding that has said, dealt with the issue. And the government points out in its brief that certainly in this circuit there's no direct holding. So I'm just asking you, there is a default rule that I see, and I don't see that that default rule is limited to applying it in a 74-22 setting. So the ruling in Brown that addressed the signature requirement, that addressed the informal claim doctrine doesn't request a waiver of statute of regulation from the IRS. It just requests... I mean, what purpose, what policy would be promoted by allowing an informal claim that was not signed to go forward, where someone who was relying on a waiver theory is barred? The class of people who would like to argue that their informal return, even though it is legit, arguing, well, the IRS worked on it and didn't mislead anybody, those people are out of luck after Brown, correct? Correct. Right. So if that body of people is out of luck, why should you treat an informal claimant differently, when you have a default rule that says clearly that the unsigned return is invalid? So in Brown, the difference here is that if we were talking about the Angeles Milling Doctrine, we're looking into the IRS's action, and we're looking at whether they examined the claim. And in Brown, this court ruled that... I understand what Brown... But... Brown is over in the Angeles Milling body of law, but I'm just saying, if you have a default rule that says something that's unsigned, it is invalid. For the informal claim doctrine to apply, the taxpayer needs to do an additional act. So it wouldn't automatically apply. So it doesn't... And there's the big distinction between it. The informal claim doctrine just allows more time than a taxpayer would normally have. But in terms of equity, it seems like the situation in Brown deserves more equity than your situation. In Brown, the taxpayer's filed something that's legally insufficient, but the IRS goes ahead and processes it, and doesn't even tell the taxpayer that it's insufficient, and it turns out it is. Here, the IRS doesn't do anything to suggest to your client that it has filed a deficient claim.  Correct. I would agree with this court. I mean, I think this is all... It's a little baffling why Brown would say that you can't get around the statutory requirement through waiver, but then this other body of case law says you can through an informal claim. They seem to be conflicting policy purposes for talking about equity. In Brown, the signature requirement was held to be statutory, and there can be no waiver of statutory requirements. So under the informal claim doctrine, and I would agree that in Brown, the court should have cited that the signature requirement can be waived. But in the informal claims doctrine, this court's saying compliance with statute and regulation can be excused until the formal claim is filed, and that is the distinction. We're not requesting a waiver from the IRS of something that they cannot waive. We're just asking them to give the taxpayer more than the three years under IRC section 6511. Thank you. I'll restore your rebuttal time. We'll hear from Mr. Rosenberg. May it please the court. Good morning. Isaac Rosenberg for the United States. I'm actually going to pick up where Ms. Hunt left off. She said she's just asking for more time under the statute of limitations under 6511 to correct a core defect in the original refund claim. The problem with that is that the statute of limitations is firm, and under Broadcamp versus the United States, it can't be told or waived. And the statute of limitations probably supplies a lot of the answers to the questions that the court is wrestling with today. Can I just be clear? When you say statute of limitations, do you mean the time to go to court or the time to make a request to an administrative agency? The time to file a refund claim with the IRS under 6511A. Was Broadcamp about that? Broadcamp was about that statute specifically and says that statute can't be equitably told. And Broadcamp's a 1998 decision, which comes much later than all these venerable cases about the informal claim doctrine. Right. And in the world of statutes of limitations generally, in district courts, is the question of tolling the same question as the kind of the adequacy of the complaint filed that launches the action? So that in a district court, if you say there's a seven-year statute of limitations, and within that seven years you file a complaint that's in some way defective, isn't the question of curable defect not the same question as a question of equitable tolling? Well, it can be, and in this case it is. And here's the problem. So this goes to Judge Hughes' question about computer vision. Mr. Dixon effectively filed two sets of claims. The first set he filed in 2017 were timely but defective because they were not properly executed under Brown. The second set filed in 2020 were untimely. Neither set of those claims individually could support a refund suit. In this case, only concern is the things that were filed in 2020. Mr. Dixon wants this court to treat those untimely filings, those untimely submissions as timely under the informal claim doctrine. And he argues that the 2020 submissions were- That they were essentially fixing a defect in the 2017 claim and therefore relate back in time, which is what KLS is all about. I think that's the theory. Right. That's the theory, and it's wrong for at least two independent reasons, and the first is computer vision. So let's assume that under computer vision, or under the informal claim doctrine, you can still sign and verify a refund claim after the statute of limitations has expired. After the statute of limitations to the agency. Correct. After that statute of limitations has expired. Mr. Dixon still loses because under computer vision, once you sue on a filing with the Now we're not talking about the computer vision, the piece about informal claims, we're talking about the germane. Correct. Correct. But that analysis, that logic applies to any corrections or amendments to a claim after the statute of limitations. So we're looking at what does the taxpayer do after the three-year limitations period has expired? Because we know under Broadcamp, that time can't be extended or told. Everything has to be done to the extent it's required within the statute of limitations. And the various strands of the substantial variance doctrine are ways that you get something out of time to be timely. So under computer vision, once Mr. Dixon sued on the 2017 submission, he shut the door on his ability to amend or correct that piece of paper that he sent to the IRS in 2020. So the thing that he filed- And the entire basis for that is that the FDR executive order allocating powers across agencies in 1933, is that right? Well, that goes to the IRS's jurisdiction over the piece of paper. But it's more than that. So computer vision, when it made this assertion, it made this point, it's basically the analog to the IRS rejecting an improperly executed refund claim for a defect. So the informal claim doctrine doesn't work if the IRS rejects something as defective before the taxpayer corrects it. When you sue on a defective piece of paper, and then it's dismissed by court, because the court in Dixon 1 determined that that piece of paper was defective, you can't amend that thing anymore. What you submit to the IRS after that, what Mr. Dixon submitted to the IRS in 2020, wasn't an amendment or a correction to the thing that he submitted in 2020 anymore. It was a new piece of paper, it was a new claim, and it had to satisfy all the statutory requirements for refund claims on its own. And because it was filed more than after the statute of limitations had expired.  What you're saying, you're stating a kind of coherent view, but the question is whether that coherent view is in fact the correct view. And Cale seems to be about how a timely defective claim can hold the statute of limitations open for a cure, which would then relate back. And the cure is a newly proper claim. So are you hanging your hat in describing the cured filing as a new claim entirely on this executive order that says the window closes once the IRS is done. Done either because now DOJ runs the matter, or because something else. It's not just because the IRS doesn't have authority to take action on the thing once  This is right out of Memphis Cotton. There's a quote on page 72. That's an actual rejection. Right, I get that. Right. If it's an actual rejection and there's an amendment afterward, it's too late to make the correction. A dismissal of a defective refund claim as unduly filed is the same, functionally the same as if the IRS had looked at the piece of paper from 2017 and said, oh, this isn't signed. Reject it. Now the taxpayer has to fix it. And if they've waited until the end of the statute of limitations to fix the defect in their submission to the IRS, then they're out of time under 6511, and they're barred by the statute of limitations. So this is not an argument that you made to the Court of Federal Claims, right? It's not. Okay. It doesn't even sound like the argument you made in your brief. I mean, you didn't cite Brockamp in your brief, did you? Brockamp's discussed in Computer Vision, and the statute of limitations is the entire essence of these doctrines. There's no way around it. And the Supreme Court was very emphatic in Brockamp about the statute of limitations. What is the law generally in statute of limitations and defective notices of appeal that can be cured out of time? Okay. I didn't think that you needed equitable tolling for that. I thought that there was a body of law under Rule 4 or Appellate Rule 4 or other things that say you don't need equitable tolling to cure a defect as long as the notice of appeal is good enough. Okay. A lot of these Supreme Court cases draw analogies to pleadings in litigation. And the closest analogy that I've been able to come up with that mirrors the problem in this case... And is it Kales or is it... I think it's Kales and Amendments. It's been so long, especially the Cardozo. Yeah. Right. Talking about analogizing to pleadings. Relations back with amendments, right. So here's basically the analogy in this case. You file a tort suit, a negligence claim. You assert all three of the four elements, but you haven't pled the final element. And your complaint is dismissed for failure to state a claim. Okay. And that's basically what happened here. Once Mr. Dixon sued on his 2017 filing, and it was dismissed because it wasn't duly filed. If you then file a new complaint in the court that fixes the problem in your original pleading, you would never call that second complaint an amended complaint. It's a new complaint. Right. But I guess the problem I'm having... This is why I started when I asked you right at the outset about statute of limitations. There's the precondition to get into court, that's 74-22. Absolutely doesn't apply, or rather that barred the first suit because there had not been a cure. You couldn't get into court without a duly, whatever the expression is, duly something refund claim. That's not the same as the 65, the what, 6-0- 6511-A. Well, there's 6511-A, but also the 6-0- 6532. 6-0-6-1 and 6-0-6-5, which were the provisions relied on for the signature requirement in Brown. That's about what you need to do to have Treasury actually entertain your claim. So why isn't the question whether, take the body of law about curing defective pleadings and forget about the court, and you have a pleading that isn't signed, and now it's amended after the statute of limitations runs to now be signed. Or something else like that in the notice of appeal context. There are cures you can make, right? Without talking about tolling. Sure, if there's an unbroken chain of events in front of the tribunal. And the computer vision problem here is that the taxpayer could like- Can I just make sure I understand? If they filed the defective claim, and even if the statute of limitations had run at the appeal after that cured the defective claim, would that fall within the informal claim doctrine and be a proper cure, as long as they had not yet proceeded to court? No. Why? Okay, and that goes to our principle argument and the basis for the trial court's ruling. So we go back to first principles and default rules. You have to file a claim with the IRS before you sue. It has to be duly filed, which means it has to be properly signed and executed, and it has to be timely. Okay? Now, to the extent that you have to do all the things required for a refund claim before the IRS, you should have to do it within the three-year statute of limitations, because that time limit can't be extended. This court's case law in American Radiator, Sikhanoff Vegetable, and computer vision recognize that if there are cures, if there are waivers, all these things have to happen within the statute of limitations. I thought Kales, the whole point of Kales is that that's not true. What Kales said was that a very skeletal assertion of a claim amounted to a claim, even though it didn't satisfy the regulation requiring specificity, and that as long as the IRS had not rejected the claim for lack of specificity under the regulation, the IRS could not complain about it if the claim was fixed before the IRS took action on the claim. And that doctrine... But out of time, meaning years later? Yes, if the IRS doesn't reject it. And that doctrine... A whole different ball of wax. Now, as long as we're still talking about purely defects of form, like filing on the wrong piece of paper, or a failure to comply with a purely regulatory augmentation of a statutory requirement, that line of cases still works, there's no problem. Because under this court's decision in American Radiator, those irregularities in the original filing are corrected and cured retroactively. They're treated as though they were done non-proton to the time of the original submission. But under Brown, when it comes to statutory requirements, we can't waive them. So under the waiver doctrine, if we try to affirmatively waive the requirement to sign and verify within the statute of limitations, Brown says, that's no good, and if the taxpayer doesn't fix it in time, they're going to be out of luck. That's what happened in Brown. That's what happened in Dixon 1. How can it... Well, the informal claim doctrine is essentially a doctrine of constructive waiver. Well, or maybe not. Maybe it's a doctrine that says, as long as the rule violated, whatever the rule is, is of a certain nature, not from a certain source, not whether it comes from Congress or whether it comes from the IRS, but whatever the assessment would be. The statute actually permits the treatment of a fixing of that problem to relate back. So no violation of a statute. Why does one not read Kales to say, this is a piece of the statutory regime, the allowance of out-of-time cures in certain circumstances? There are two problems with that. The first is Brockham came much later and was emphatic about 6511. I don't even know if 6511 existed in the 1940s, and it probably did not. But this is not... I'm sorry, but this is not equitable tolling, so that doesn't work. The second big problem is that before 1954, there was no statutory requirement that you had to sign and verify your refund claims. The requirement to sign and verify was a function of a regulation, the same regulation that required specificity. Why do the cases refer to filing refund claims under oath? Right, because the regulation required the refund claim to be under oath. That was purely under the regulation. There was no statute. Section 6065 wasn't... But at the time of Kales, it wasn't a statutory requirement. It was not. So Kales didn't stand for the proposition that you could cure a statutory violation? No, and in fact, it says the division, and the quote from Kales says, the line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time and the function of a regulation. Did you explain this to us in your brief? This is probably under the... Well, no. This is... Yes, we did make this argument. Sign and verify starts in 1954? For refund claims, verification under penalties of perjury comes with the 1954 Revenue Act. That revenue could... What about signature? Signature was not required by statute. Oh, no. So, yes, also 1954. Before that, you had to sign your returns and had to submit your returns under oath, but not refund claims. And it wasn't until 1976 that the regulations required income tax refund claims to be filed in the form of an income tax return. So, we have these old cases. They adopt a doctrine dealing with a visor. I see I'm up against my time, but if I could finish. So, you're saying that basically the reason why we don't see this issue raised in the earlier cases before 1954 is there was no statutory requirement for signing and verifying? Correct. And then we have a venerable doctrine from the Supreme Court that applies to a still existing regulation, and the case law deals with these issues as though they are violations of regulation or purely formalistic defects. But after Brown, the court can't do that anymore because we know the requirement to sign and verify a refund claim is imposed by statute, and it can't be affirmatively waived, and it would be very perverse to have a doctrine of constructive waiver where the IRS could essentially allow something to be imperfect, improperly executed within the statute of limitations, but then just because they haven't rejected the claim yet, the taxpayer can sue on that thing based on a constructive waiver where an affirmative waiver wouldn't allow it. Well, so much of what we've been talking about here is new on appeal. Why should we not vacate and remand for actual development of, in light of Brown and many of these new arguments? Well, your question before was whether we had forfeited the argument by not raising it below. And it's possible that the other side forfeited forfeiture, but sometimes that's also not true. Well, the problem with your late-raised argument is that if we were to adopt it, it has a slice-through effect on refund claims, right? That would be a very big change in existing tax law. Well, the computer vision argument is narrower, is a narrow basis for the claim. Yes, but you're asking us to take something out of the germaneness doctrine and apply it generally to all claims, right? And then to do that, whether it's right or wrong, has a dramatic impact. And what I'm saying is we haven't, the question of the strength of this regulation that pushes the case over to justice or wherever it pushes it away from that arrest, we haven't, as the presiding judge pointed out, we don't really know much about that. So why should this court exercise its discretion to hear your final argument in your brief? Two responses. The first is the wide-sweeping effect may not be that wide after all for two reasons. And you don't know and I don't know what it could be. Because the vast majority of refund claims are filed in original returns. And so if there's a problem with the signature verification in an original return, the IRS will flag it and the taxpayer will have three years to fix it. This return was an amended return filed on the eve of the statute of limitations expiring. That was a decision that this taxpayer made or his preparer chose to make in addition to not properly executing the thing in the first place. The second reason why the effect of this might not be so wide is because as of the summer of 2020, you can file your amended returns electronically. So this kind of signature verification deficit is going to be a very, very small problem if it's a continuing problem at all. But to Judge Toronto's question about forfeiture or possible forfeiture, forfeiture, if we are right about your inability to correct this sort of defect out of time, and if you understand that the 2020 submission has to satisfy all the statutory requirements on its own because they can't be treated as an amendment or a correction to the original submission, then the thing that was filed in 2020 was actually an untimely claim under 6511. And under the Supreme Court's decision in Dahm and Brockamp, that's a jurisdictional defect. Can I ask you a couple of things? So what about the three-day window in September of 2020? Why didn't the October of 20... I'm off on a date. I remember the question. I know. I think I have the answer. So the problem with waiting three days until after the mandate issued is if you understand the IRS to have then rejuvenated its jurisdiction over the claim, the claim was submitted before the IRS could take action. And under 6532, there has to be a six-month window from the time the claim is submitted until a suit is filed. Because if a suit is filed before the six-month window under 6532 hasn't run yet, then the claim is unright. You can't get into court unless you wait the six months. And so if the claim, you know, three days after the mandate issued comes into the IRS's hands again, by dint of the lawsuit, rather, the lawsuit filed three days after the mandate issued would have been unright under 6532. So that's another separate problem if you reject the computer vision argument and if you reject the idea that you can satisfy strict statutory requirements outside of statute of limitations through inaction by the IRS. Another question. When I look at 6061, the signing of returns, there is in that repeated grants to the secretary of discretion to decide what to do. How does one get an absolute statutory rule out of that that precludes the secretary from acting? And we addressed this in Brown. So these... Brown seems to state this, but put Brown aside because I want to know why. So the authorization of the statute is for rulemaking. The IRS can relax the statutory rule by adopting a regulation and then it has to comply with the regulation. It can't be on an ad hoc basis. So if the IRS adopts a regulation that relaxes the default rule, which is what happened in Brown, the only way... Does Treasury have the general agency background authority to grant exceptions to its regulations? Yeah. There's a statute. I'm sorry. I don't remember off the top of my head. But there's a statute that authorizes rulemaking to implement the income tax scheme. Okay. Well, let me... Right. And does it say that Treasury has general authority in appropriate cases to waive requirements of its regulations? I don't think so. I'm not aware of a statute that allows the agency to waive the requirements of its own regulation. But to your question, how can we... So the problem in Brown and in Dixon 1, Brown, was that we had our power of attorney that was not submitted with return. And so what the argument was and what the court agreed with is that in order to satisfy the statutes to sign and verify, if there's a regulation that relaxes the default rule, the only way you can satisfy the statute is to comply strictly with the regulation. You can't dance around the requirements of the statute by sneaking under an alleged waiver of the regulation. Okay. And one other question. Yes. So was it last week, I think, the Supreme Court decided a case that seems to... Wilkins. What's it called? Wilkins. Wilkins. That seems to, perhaps more vigorously than earlier decisions, say on sovereign immunity and timing requirements, it's going to be extremely rare that we would find anything that we would be prepared to call jurisdictional. Sure.  No. Because this is still mandatory. And we raised it timely. And if it's a claims processing... Correct. But you, a couple of times said, you know, we can't do something because it's jurisdictional. Right. Well, until the Supreme Court actually says that Dahlm was wrong and Clintwood Alcorn was wrong about the effect of 6511, then no. I don't think Wilkins erodes the basis for that, for the understanding that the 6511 requirement is jurisdictional. And I only raise it as a jurisdictional point because you asked the question about forfeiture and my response to that is, well, if it's jurisdictional, you know, it has a jurisdictional consequence under Dahlm and Clintwood Alcorn. And therefore, you know, I wish we raised it earlier, but I'm trying to answer the Court's questions and be helpful now. Thank you, sir. Thank you. May it please the Court, the first thing I want to address from the government's argument is the jurisdictional issue. This Court in Brown stated that 7422A is not jurisdictional, it's a claim processing rule. So whether... So there's no jurisdictional issue, there's the claim processing issue. I'm sorry, just say that again. 7422A is not jurisdictional, and this Court ruled that in Brown, or stated that in Brown. They found this is a claim processing rule. So the government's statement that this is a jurisdictional issue is just incorrect. The other issue... Well, but I don't... Isn't their position not that 72... It's that you have to make the correction within the statute of limitations at the agency, not that the signature requirement itself is jurisdictional. It seems like that's two different arguments. So correct... Whether or not the signature requirement is... I mean, I don't think they're arguing that the signature requirement itself is jurisdictional, but that once the time limit has passed, that is jurisdictional under Brockhamp, that you can't correct it. It's our position under the informal claims doctrine from an agency perspective. So the 7422A, I apologize for confusion, was from a court's perspective, whether it confers jurisdiction to the court. But from an agency perspective, the informal... Let me just... You file the defective claim, which you're now trying to say was an informal claim. And then after the defect is found, and after the statute of limitations at the agency has cured that defect? Correct. If the defect would be cured with... How can the agency act on it if it no longer has authority under the statute of limitations to act? The informal claim doctrine is a judicial doctrine, and it would confer the jurisdiction onto the court to make the assessment of the claim. But if the correction would need to be made within the statute of limitation, we don't need a judicial doctrine. That's just called a superseding return. Any taxpayer who makes a mistake on the return can file a superseding return. That wouldn't require any court intervention on that part. In your view, the purpose of the informal claim doctrine is to toll the statute of limitations anyhow? Correct, yes. Forever? No, just until the perfected claim is filed. And that's a different... Sympathetically, you could have an informal claim filed today, right, and the IRS doesn't ever turn it down, and my great-grandchild could cure the claim. The... Correct? One time. There's no limit. Well, you... If... I don't believe in that scenario that it would be possible that a grandchild could file a return. No, there is no limit to the length of time in which under the informal claim doctrine as articulated by all the courts, the length of time during which you have to cure whatever the fault was, so long as the agency hasn't shut you off by denying the claim, it's infinite. Yes? Technically, it's a very long time, but courts have looked at cases. I believe in Calgary, it was over 10 years before the valid claim was filed after even that issue was litigated in court. So, yes, it does... It holds the statute of limitation for quite a long time, but that has not been grounds in other circuits to turn down the informal claim doctrine. Thank you, and thanks to both counsel. Thank you.